IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMIE K., | |
| Plaintiff, | **8:21-CV-373** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | **MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS** |
| Defendant. | |

Plaintiff, Jamie K., filed her Complaint, Filing 1, seeking judicial review of Defendant Commissioner of the Social Security Administration's (SSA's), denial of her applications for disability insurance benefits and supplemental security income. Jamie K. moves this Court for an order reversing the Commissioner's final decision and remanding her claim under 42 U.S.C. § 405(g). Filing 12. The Commissioner filed a motion to affirm the agency's final decision denying benefits. Filing 19. For the reasons stated below, the Court grants the Commissioner's motion and denies Jamie K.'s motion.

## I.     BACKGROUND

Jamie K. was forty years old when she filed for disability insurance benefits, Filing 9-2 at 29, and forty-one years old at the time of the hearing and corresponding decision at issue, Filing 9-2 at 41. She has a GED, Filing 9-2 at 41, and worked a multitude of different jobs from 2004

until 2017, including work as a waitress, cashier, and as a house manager serving disabled adults. Filing 9-2 at 47-51.

## A.  Procedural History

On August 30, 2019, Jamie K. protectively filed applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 401–34; Filing 9-5 at 2-10. Jamie K. alleged a disability-onset date of March 1, 2019. The Commissioner initially denied these claims on December 11, 2019, and denied them upon reconsideration on May 1, 2020. Filing 9-2 at 14. On October 6, 2020, a telephonic hearing was held before the administrative law judge (ALJ). Filing 9-2 at 39.

On November 30, 2020, the ALJ issued her decision denying Jamie K.'s claims, finding Jamie K. was not disabled as defined by sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act between March 1, 2019, and the date of the ALJ's decision. Filing 9-2 at 31. The Appeals Council denied review of the ALJ's decision on July 27, 2021. Filing 9-2 at 2. Jamie K. timely filed the present action for judicial review. Filing 1; *see* 42 U.S.C. § 405(g).

## B.  Administrative Hearing

The ALJ heard the matter on October 6, 2020. Filing 9-2 at 39. Jamie K.'s attorney explained that Jamie K. was scheduled for a "BAHA device" implant in two weeks, which is similar to cochlear implants, to help with her hearing. Filing 9-2 at 41. Her attorney explained that "it's a hearing case, Your Honor, and it's also a case where the individual has had multiple surgeries and is off work because of those multiple surgeries." Filing 9-2 at 42. Jamie K. had prior surgeries on her ear on March 6, 2018, July 24, 2018, and January 30, 2019. Filing 9-2 at 44.

Jamie K. testified that she lived in a home with her mother, 18-year-old daughter, 17-year-old son, and 14-year-old daughter. Filing 9-2 at 46. She testified that she goes to the grocery store but cannot stay very long. Filing 9-2 at 58. She also testified that she folds laundry but has to take breaks because her arms fall asleep. Filing 9-2 at 58. Finally, she testified that she smokes two cigarettes a day. Filing 9-2 at 59.

Jamie K. testified that she applied for disability benefits because she has a hard time hearing. Filing 9-2 at 51. She testified that she cannot wear earphones, because they make her ears bleed due to her extremely small ear canal, or headphones because they push on her ear, impeding her hearing. Filing 9-2 at 51. She also testified that she was throwing up or having diarrhea almost every day. Filing 9-2 at 51. Finally, she testified that she had problems with her feet and hands, and that she was depressed because of her inability to work. Filing 9-2 at 52.

Jamie K. explained that she has issues hearing when there is background noise. Filing 9-2 at 54. She explained that background noise causes voices to "sound[] like a foreign language" to her and that she needs closed captioning when she watches TV. Filing 9-2 at 54. When it comes to speaking to individuals from a distance, she explained that she has to be "two or three feet" from someone to hear them. Filing 9-2 at 55. They also have to be looking at her, she explained, because she does not have a sense of where sounds come from. Filing 9-2 at 55.

Jamie K. testified that she believed she was still experiencing symptoms from clostridium difficile[1] (C. diff), with which she had been diagnosed in early 2019, Filing 10-2 at 102,  because she was still going to the bathroom "like 20, 30 times a day" and vomiting. Filing 9-2 at 56. She further explained that she has difficulty sitting and standing due to her neuropathy and feet

---

[1] Clostridium difficile, or "C. diff.," is a bacterium that causes diarrhea and inflammation of the colon. *See C. diff (Clostridioides difficile)*, Ctrs. for Disease Control and Prevention (July 12, 2021), https://www.cdc.gov/cdiff/index.html.

problems. Filing 9-2 at 58. Jamie K. stated that she had been going to telehealth appointments once a week for over a year. Filing 9-2 at 60. She testified that she could hear her therapist okay if she was in a quiet room with maximum volume while her therapist wears a headset. Filing 9-2 at 60.

The ALJ's first hypothetical posed to the vocational expert (VE) resembled her eventual determination of Jamie K.'s residual functional capacity (RFC). Filing 9-2 at 23, 63-64. The VE testified Jamie K. could perform work as a Routing Clerk, Router, and Produce Weigher. Filing 9-2 at 64. Upon questioning by the ALJ, the VE responded that there was no discrepancy between her testimony and the Dictionary of Occupational Titles (DOT) in terms of the job, exertion, or skill level. Filing 9-2 at 64-65. The ALJ relied on this testimony to find Jamie K. "not disabled" at step five of the sequential evaluation process. Filing 9-2 at 30-31.

### C.  Additional Medical and Other Evidence

In 2016, Jamie K. had a left tympanoplasty, right tube placement. Filing 10-1 at 16. On September 12, 2017, Jamie K. had a left sided postauricular approach to repair an oval and round window fistula, in addition to a removal of retained tube and tympanoplasty with a fascia graft. Filing 10-1 at 17. On March 6, 2018, Dr. Gary Moore, M.D., performed a left endaural approach cartilage graft tympanoplasty with placement of an anterosuperior T-tube. Filing 10-1 at 99. A few months later, on July 24, 2018, Dr. Moore performed a left endaural approach to a Fisch canaloplasty and a tympanoplasty to address left ear canal stenosis and a tympanic membrane perforation. Filing 10-1 at 80. The Court understands this to mean that Dr. Moore performed surgery to widen Jamie K.'s left ear canal and to repair a hole in the membrane between her ear canal and her middle ear.

On January 30, 2019, Dr. Iris Moore, M.D., performed a nasoseptal reconstruction/submucous resection of inferior turbinates. Filing 10-1 at 40. Jamie K. alleges her onset date of disability was about a month after this surgery on March 1, 2019. Filing 9-2 at 17.

Shortly thereafter, on March 29, 2019, Jamie K. reported continued abdominal pain and GI symptoms to her primary care provider, Julie Nieveen, APRN-NP. Filing 10-1 at 134. Jamie K. saw Ms. Nieveen again on April 5, 2019, for primary care concerning GI symptoms following emergency room department treatment. Filing 10-1 at 131.

Three days later, Jamie K. saw Dr. Gary Moore for a follow-up concerning her left canal stent. Filing 10-1 at 15. She reported both ears felt uncomfortable. Filing 10-1 at 15. Dr. Moore noted the left stent was lost, recommended wearing the left ear stent at night, and explained that her left ear canal was open but narrow. Filing 10-1 at 19.

On April 10 and May 1, 2019, Jamie K. saw Ms. Nieveen in primary care for abdominal pain and GI symptoms, in addition to increasing anxiety symptoms. Filing 10-1 at 126, 129. On May 14, 2019, Jamie K. saw Dr. Helen Fasanya-Uptagraft, M.D., concerning her recent C. diff diagnosis and GI symptoms. Filing 10-1 at 102. Dr. Fasanya-Uptagraft observed that Jamie K. exhibited a normal gait and station and noted that Jamie K. demonstrated a normal mood and affect and was oriented to person, place, and time. Filing 10-1 at 104. Labs were ordered, with a plan for another round of antibiotics should Jamie K. have recurrent or refractory C. diff. Filing 10-1 at 105.

On July 2, 2019, Jamie K. saw Ms. Nieveen in primary care after she injured her right foot and ankle when a wooden step she was walking on broke. Filing 10-1 at 124-25. She also reported feeling down due to her father recently passing away unexpectedly. Filing 10-1 at 125. She told Ms. Nieveen that she was living with her mother to help around the house. Filing 10-1 at 125. Ms.

Nieveen observed that Jamie K. exhibited a normal gait. Filing 10-1 at 125. Upon examination, Jamie K.'s right foot had a decreased range of motion, tenderness, and swelling. Filing 10-1 at 125. Ms. Nieveen ordered x-rays and wrote a prescription for Lexapro for Jamie K.'s issues with depression. Filing 10-1 at 126.

On July 10, 2019, Jamie K. saw Dawn Nokels, PA-C, concerning her ear pain. Filing 10-1 at 9. She reported that her left ear was "really bothering her" and that she was concerned about skin growth. Filing 10-1 at 9. Ms. Nokels ordered a CT scan of the temporal bone and prescribed Medrol, a steroid. Filing 10-1 at 13-14. On August 19, 2019, the CT scan was performed, and Jamie K. saw Dr. Gary Moore afterwards. Filing 10-1 at 2, 7. Dr. Moore noted that Dr. Iris Moore would perform diagnostic tests for Jamie K.'s atypical temporomandibular joint dysfunction (TMJ) pain as no abnormalities were observed on the CT scan. Filing 10-1 at 5. Dr. Moore also recommended a consultation for a sphenoganglion block to help address Jamie K.'s pain. Filing 10-1 at 5.

On August 27, 2019, Jamie K. saw Ms. Nieveen for primary care concerning her hypertension and her feeling like she was going to pass out or have a seizure. Filing 10-1 at 122. Jamie K also discussed with Ms. Nieveen her idiopathic peripheral neuropathy in her arms, hands, legs, and feet. Filing 10-1 at 122. Ms. Nieveen started Gabapentin for idiopathic peripheral neuropathy and referred her to neurology. Filing 10-1 at 123. Jamie K. then applied for disability benefits on August 30, 2019. Filing 9-1 at 14.

On September 6, 2019, Jamie K. underwent diagnostic testing at an epilepsy clinic. Filing 10-1 at 116-121. She reported that she was driving and taking care of her mother, who has age-related macular degeneration. Filing 10-1 at 117. It was noted that she had 5/5 strength in her upper and lower extremities and exhibited a normal gait and station. Filing 10-1 at 120. To help diagnose

6

Jamie K.'s claimed seizures, the provider ordered an MRI and EEG, and to diagnose Jamie K.'s peripheral neuropathy, he ordered an EMG. Filing 10-1 at 120.

On September 30, 2019, Jamie K. completed her initial disability report. Filing 9-6 at 7. She listed the following conditions that limited her ability to work: (1) "S/P 5-6 surgeries between 2016 & 2018 on Left Ear"; (2) "Chronic Dysfunction Eustachian tubes, Const Hearing Loss"; (3) "Collapse of Ear Canal, Edema in Colon, Chronic Mastoditis"; (4) "Fistula in ear that sucked fluid into and out of brain"; (5) "C-Diff from surgeries and antibiotics 30+ trips bathroom"; (6) "Hearing Aide – Left ear or a removable stent, Gastritis"; (7) "Nerve Pain in head, Bulging Disk in back, Bial Vomiting"; (8) "S/P 2019 Deviated septum repair, IBS-D, Low BP"; (9) "Anxiety, Generalized Compulsive Epilepsy, Insomnia"; and (10) "Idiopathic hereditary neuropathy, Homocystinemia anemia." Filing 9-6 at 7.

On October 18, 2019, Diana L. Vallier, Jamie K.'s mother, completed a third-party function report. According to Ms. Vallier, Jamie K. lives in her house, takes care of the laundry most of the time, wakes her kids up for school, and transports them to school. Filing 9-6 at 26-27. Ms. Vallier stated that Jamie K. monitors the food intake of their cats, can feed herself "good," and uses the toilet "good." Filing 9-6 at 26-27. Ms. Vallier also stated that Jamie K. prepares meals, including sandwiches, frozen dinners, and a variety of Asian dishes. Filing 9-6 at 28. Jamie K. also sweeps the floor or folds some clothes when she feels okay. Filing 9-6 at 28. Finally, Ms. Vallier stated that Jamie K. shops for groceries. Filing 9-6 at 29.

On October 23, 2019, Jamie K. underwent brain MRI and EEG testing, which showed normal brain function and no epileptiform discharges or seizures. Filing 10-1 at 216-217, 232. Jamie K.'s treating physician continued her dose of Keppra for seizures and gabapentin for

peripheral neuropathy and dictated that Jamie K. taper off of Lexapro and eventually switch to Cymbalta. Filing 10-1 at 216.

On October 25, 2019, Jamie K. saw Ms. Nieveen for primary care because she had been experiencing pain in both arms for three weeks and continued to have right foot pain that weightbearing exacerbated. Filing 10-1 at 214. On exam, she had pain in her cervical and thoracic spine, but exhibited a normal range of motion, and her motor function and coordination were intact. Filing 10-1 at 215. Ms. Nieveen reviewed x-rays, noting that her cervical spine showed minimal arthritis. Filing 10-1 at 215. She continued gabapentin and Cymbalta and added on Skelaxin. Filing 10-1 at 215.

On October 30, 2019, Jamie K. saw Dr. Fasanya-Uptagraft for her daily nausea and other GI symptoms. Filing 10-1 at 185. Dr. Fasanya-Uptagraft noted Jamie K.'s symptoms were "more than likely functional in etiology" but ordered a gastric emptying study to rule out some organic causes. Filing 10-1 at 187. Given her C. diff earlier in the year and frequent stools, a repeat GI pathogen panel was planned. Filing 10-1 at 187. Jamie K.'s gastric emptying study on November 4, 2019, was normal. Filing 10-1 at 228.

On November 27, 2019, Jamie K. saw Dr. Lucas Stenzel, M.D., a neurologist, concerning her neuropathy issues. Filing 10-1 at 209. She reported that she was driving and taking care of her mother. Filing 10-1 at 211. Dr. Stenzel noted that her recent and remote memory were intact, and her attention and concentration were appropriate. Filing 10-1 at 212. Dr. Stenzel also noted that she exhibited normal muscle bulk throughout and 5/5 motor strength. Filing 10-1 at 212. Dr. Stenzel examined her and noted light touch sensation was intact in her hands, while there was a patchy loss of light touch sensation in her toes, mainly on the right foot. Filing 10-1 at 212. Dr. Stenzel observed that her gait was normal and that she was able to walk on her tip toes and heels.

8

Filing 10-1 at 213. Dr. Stenzel ordered an EMG of the right upper and lower extremities and directed vitamin B12 supplementation. Filing 10-1 at 213.

On December 4, 2019, Jamie K. saw Dr. Kevin Grosshans, M.D., concerning her right foot pain. Filing 10-1 at 242. Dr. Grosshans diagnosed a likely anterior process avulsion fracture and recommended an MRI. Filing 10-1 at 243. The next day, Jamie K. underwent an EMG of her right arm and leg, which revealed that both limbs were normal. Filing 10-1 at 208.

On December 18, 2019, Jamie K underwent an MRI of her right foot. Filing 10-1 at 244. The MRI showed some damage to her foot and the joints in her foot.. Filing 10-1 at 244.

On December 23, 2019, Jamie K. saw Dr. Gary Moore concerning ear pain. Filing 10-1 at 267. Dr. Moore noted the pain was "likely secondary to tube pushing on TM with movement" and directed ear drops; planned for a videonystagmography, posturography, and monitored fistula test in January; and recommended saline sinus irrigations. Filing 10-1 at 271.

On January 8, 2020, Jamie K. saw Dr. Grosshans concerning her ongoing right foot issues. Filing 10-1 at 246-47. Dr. Grosshans diagnosed her with right foot calcaneocuboid joint arthrosis and proceeded with an injection to see if it would help relieve her symptoms. Filing 10-1 at 246-47. About two weeks later, on January 21, 2020, Jamie K. saw a physician concerning abnormal thyroid function tests. Filing 10-1 at 253. The physician concluded that the lab abnormalities were most likely related to transient thyroiditis, so there was no need to start treatment. Filing 10-1 at 257.

On February 5, 2020, Jen Korner, LIMHP, provided a treatment summary concerning Jamie K.'s counseling since October 30, 2019, for assistance in relieving bereavement, adjustment, and depression symptoms. Filing 10-1 at 282-83.

Two days later, Jamie K. saw Dr. Grosshans concerning her right foot. Filing 10-1 at 288. She denied that the injection provided any relief. Filing 10-1 at 288. Dr. Grosshans diagnosed "chronic right foot pain with a level of neurogenic pain and calcaneocuboid joint arthrosis." Filing 10-1 at 288. Dr. Grosshans recommended physical therapy and a trial of topical medication and instructed her to follow up with a rheumatologist to see if he or she had options that would provide relief. Filing 10-1 at 289.

On February 10, 2020, Jamie K. saw Dr. Gary Moore for a left BAHA evaluation. Filing 10-1 at 360. Dr. Moore diagnosed "MHL, Left ear, restricted right" and instructed Jamie K. to use of hydrocortisone cream on the left side postauricularly and to proceed with left BAHA implantation. Filing 10-1 at 364.

On February 26, 2020, Jamie K. saw Ms. Nieveen for primary care concerning her depression. Filing 10-1 at 305. She explained that she saw her therapist weekly. Filing 10-1 at 305. Ms. Nieveen diagnosed severe episodes of recurrent major depressive disorder, without psychotic features, and generalized anxiety disorder. Filing 10-1 at 307. Ms. Nieveen continued Cymbalta and talk therapy and added Wellbutrin XL to Jamie K's list of medications. Filing 10-1 at 307.

On March 24, 2020, Ms. Korner provided another treatment summary concerning Jamie K.'s counseling. Filing 10-1 at 296. Her diagnosis changed from "Adjustment Disorder, Unspecified" to "Major Depressive Disorder, Recurrent Episode, Moderate." Filing 10-1 at 296. Two days later, Jamie K. saw Dr. Fasanya-Uptagraft concerning her GI issues via telemedicine. Filing 10-1 at 336. She reported frequent stools and nausea/vomiting. Filing 10-1 at 336. Dr. Fasanya-Uptagraft planned labs, pelvic floor physical therapy for management of fecal incontinence, and a colonoscopy for a 5-year surveillance of a tubular adenoma. Filing 10-1 at 338.

March 30, 2020, was Jamie K.'s date last insured for disability insurance benefits. Filing 9-2 at 17.

On April 1, 2020, Jamie K. saw Dr. Grosshans concerning her right foot issues. Filing 10-1 at 341. Dr. Grosshans observed no edema in her foot and noted that she was neurovascularly intact without any signs of neurogenic pain. Filing 10-1 at 341. Dr. Grosshans also noted that she maintained good activation of the tendons and full strength against resistance without increased pain. Filing 10-1 at 341. Dr. Grosshans determined that the neurogenic pain had resolved to the point where proceeding on with surgery was reasonable. Filing 10-1 at 341. On April 30, 2020, Ms. Nieveen cleared Jamie K. for surgery via telemedicine. Filing 10-1 at 316-20.

One month later, Jamie K. saw Dr. Gary Moore concerning her stent in her left ear canal, reporting hearing bubbles in her left ear and being off balance. Filing 10-1 at 366. Dr. Moore ordered a CT scan to assess otalgia. Filing 10-1 at 370. Following the CT scan performed on May 13, 2020, Jamie K. saw Dr. Moore, who noted the CT scan showed no signs of left ear infection. Filing 10-1 at 371, 376. Dr. Moore recommended a bilateral KTP laser myringotomy with PE tube placement. Filing 10-1 at 375.

On May 21, 2020, Dr. Grosshans performed a right foot calcaneocuboid joint resection arthroplasty to address right foot calcaneocuboid joint arthrosis. Filing 10-1 at 349. On June 5, 2020, Jamie K. saw Dr. Grosshans for a follow-up. Filing 10-1 at 343. She had been using crutches but reported minimal pain. Filing 10-1 at 343. Dr. Grosshans directed that she bear weight as tolerated in her CAM boot and have the boot off for motion exercises. Filing 10-1 at 343.

Also on June 5, Ms. Nieveen cleared Jamie K. for her left ear surgery via telemedicine. Filing 10-1 at 321-26. On June 16, 2020, Dr. Gary Moore performed a Leonardo laser assisted myringotomy and placement of T-tube on the left and a grommet tube on the right to address

chronic serious otitis media secondary to eustachian tube dysfunction bilaterally. Filing 10-1 at 378. Dr. Grosshans noted severe atelectatic tympanic membrane on the right and serious effusion on the left. Filing 10-1 at 378. On July 8, 2020, she saw Dr. Moore for a follow-up, reporting her left ear had pain and had been bloody. Filing 10-1 at 379. Dr. Moore directed continued use of ofloxin drops and Tylenol or Motrin as needed. Filing 10-1 at 382.

That same day, Jamie K. saw Dr. Grosshans concerning her right foot. Filing 10-1 at 345. She had been ambulating with a boot and reported some soreness but complained more of the heat of being in the boot than anything else. Filing 10-1 at 345. Dr. Grosshans directed her to progress out of the boot into regular shoes and sandals, but to keep her activity level fairly baseline. Filing 10-1 at 345. On July 21, 2020, Jamie K. saw Dr. Grosshans for an unexpected visit. Filing 10-1 at 347. She had been picking sage when she stepped in a hole, resulting in ankle pain. Filing 10-1 at 347. Dr. Grosshans noted neurologic-type pain through the foot but found no evidence of fracture on the x-rays. Filing 10-1 at 347. Dr. Grosshans did not believe that Jamie K. suffered any damage with this fall but that it was something that would set her back a couple of weeks in her recovery. Filing 10-1 at 347.

On July 29, 2020, Jamie K. saw Dr. Noah Porter, M.D., concerning neck pain and left greater than right upper extremity radiculopathy. Filing 10-1 at 354. She reported dealing with these symptoms intermittently for years, which worsened on July 27, 2020, when she was putting her hair into a ponytail. Filing 10-1 at 354. She went to the emergency room after this incident. Filing 10-1 at 354. She reported pain with moving her neck, which was seen during her examination. Filing 10-1 at 354-55. She also had mild pain with abduction and forward flexion on the right side, pain and weakness with Jobe's testing, 4/5, and decreased strength in her left arm. Filing 10-1 at 355. Dr. Grosshans reviewed the July 27, 2020, CT scan and noted it showed "acute

12

versus chronic traumatic findings . . . with divergence of the C5 and C6 spinous processes." Filing 10-1 at 355-56. Dr. Grosshans also noted her radiculopathy and weakness throughout the left upper extremity and pain with shoulder range of motion. Filing 10-1 at 355-56. Dr. Grosshans recommended an MRI of the cervical spine, which was performed on August 11, 2020. Filing 10-1 at 352, 356. She MRI showed mild desiccation of the intervertebral disc with minimal annular bulge at C5-C6. Filing 10-1 at 353. There was no significant disc herniation, spinal stenosis, or nerve root compression. Filing 10-1 at 353.

On August 27, 2020, Ms. Korner provided another treatment summary concerning Jamie K.'s counseling. Filing 10-1 at 357-59. Ms. Korner noted that Jamie K. had been in a better mood over the past 6 months. Filing 10-1 at 359.

On September 16, 2020, Jamie K. saw Taylor Erlenbusch-Hepp for a follow-up concerning her recent surgery. Filing 10-1 at 384. She reported that a black tar-like and green substance had been coming out of both of her ears for the past few weeks. Filing 10-1 at 384. She further stated that she was interested in getting a left BAHA to improve left hearing. Filing 10-1 at 384. Ms. Erlenbusch-Hepp instructed her to use ofloxin drops as needed and noted that she had right mild to moderate sensorineural hearing loss and left moderate mixed conductive and sensorineural hearing loss. On September 21, 2020, Jamie K. saw Dr. Gary Moore and Ms. Downey concerning her hearing loss. Filing 10-1 at 395, 400. Ms. Downey performed an audiogram and noted that Jamie K. had mild, flat sensorineural hearing loss in her right ear and mild to moderate mixed hearing loss in her left ear. Filing 10-1 at 400. At the appointment, Jamie K. reported that after she suffered a bump on her head she began experiencing intermittent hearing loss. Filing 10-1 at 395. Dr. Moore noted that a left BAHA would be extremely helpful and directed her to call to set it up. Filing 10-1 at 398.

### D.  Medical Opinions

On November 21, 2019, Jamie K. saw Dr. James Mathisen, a doctor of psychology, for a consultative examination at the request of the disability determination service. Filing 10-1 at 196. She reported that she took care of all of the laundry for herself, her children, and her mother. Filing 10-1 at 198. Dr. Mathisen diagnosed Jamie K. with dysthymia and other stressor disorder/stress related disorder and assigned her a current Global Assessment of Functioning (GAF) score of 55. Filing 10-1 at 199. Dr. Mathisen also opined that Jamie K. was "capable of understanding short and simple instructions," but inferred that "she would require a specialized supervisor rearrangement who could accommodate her needs in carrying out short and simple instructions." Filing 10-1 at 199.

On December 6, 2019, non-examining agency psychological consultant Dr. Rebecca Braymen provided her opinions concerning Jamie K.'s mental limitations at the initial stage of her claims. Filing 9-3 at 8-9. Dr. Braymen opined that Jamie K. was moderately limited in her ability to carry out detailed instructions, explaining she "should avoid work that requires more detailed instructions as she may struggle to complete these tasks under ordinary supervision." Filing 9-3 at 8-9.

On April 30, 2020, non-examining agency medical consultant Terri Vontz provided her opinions concerning Jamie K.'s hearing at the reconsideration stage of her claims. Filing 9-3 at 23-34. Ms. Vontz opined that Jamie K. did not meet or equal any adult hearing listing but should not be exposed to loud or continuous noise in a work environment. Filing 9-3 at 23-34.

Also on April 30, non-examining agency psychological consultant Dr. Patricia Newman, provided her opinions concerning Jamie K.'s mental limitations at the reconsideration stage of her claims. Filing 9-3 at 28-29. Dr. Newman opined that Jamie K. was moderately limited in her ability

to carry out detailed instructions, explaining she "may have moderate limitations with more detailed tasks due to symptoms" but should remain capable of routine ones. Filing 9-3 at 28-29.

### E.   The AlJ's Findings

An ALJ is required to follow a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a).

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004)). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

Step one requires the ALJ to consider whether the claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The ALJ determined Jamie K. had not engaged in substantial activity since her alleged disability onset date of March 1, 2019. Filing 9-2 at 17.

Step two requires the ALJ to decide if the claimant's impairments are severe. 20 C.F.R. § 404.1520(c). A "severe impairment" is an impairment or combination of impairments that significantly limits the claimant's ability to perform "basic work activities," 20 C.F.R. § 404.1520(a)(4)(ii), (c), and satisfies the "duration requirement." 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;"

"[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522. If the claimant cannot prove such an impairment, then the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c). The ALJ determined Jamie K. had the following severe impairments: left ear hearing loss and major depressive disorder. Filing 9-2 at 17.

Step three requires the ALJ to compare the claimant's impairments to impairments listed in 20 C.F.R. § 404, Subpart P, App'x 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant has an impairment "that meets or equals one of [the] listings," the analysis ends and the claimant is found to be disabled without regard to the claimant's age, education, or work experience. *See id.* If a claimant does not suffer from a listed impairment or its equivalent, then the analysis proceeds to step four and five. *See* 20 C.F.R. § 404.1520(a). The ALJ determined Jamie K. did not have an impairment that met or medically equaled the severity of one of the listings. Filing 9-2 at 21.

Step four requires the ALJ to consider the claimant's RFC to determine whether the impairments prevent the claimant from engaging in "past relevant work." *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f). "Past relevant work" refers to work performed by the claimant within the last fifteen years, that was substantial gainful activity, and lasted long enough for the claimant to learn how to do it. *See* 20 C.F.R. § 404.1565(a); *see also* 20 C.F.R. § 416.965. If the claimant can perform any past relevant work, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(iv), (f). The ALJ determined Jamie K. had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b). Filing 9-2 at 23. Jamie K.'s past relevant work included jobs classified as light exertional work with a semi-skilled Specific Vocational Preparation rating (SVP) of 3, light exertional work with a semi-skilled SVP of 4, medium exertional work with a

semi-skilled SVP of 3, and medium exertional work with a skilled SVP of 6. Filing 9-2 at 29. All of these past positions exceeded Jamie K.'s RFC and the VE confirmed that Jamie K. could not perform this past work. Filing 9-2 at 29. As a result, the ALJ determined that Jamie K. would be unable to perform past relevant work. Filing 9-2 at 29.

Step five requires the ALJ to determine whether the claimant is able to do any other work considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). The burden at step five is on the ALJ to show that the claimant "retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790 (quoting *Eichelberger*, 390 F.3d at 590). Based on the testimony of the VE, the ALJ determined that jobs existed in significant numbers in the national economy that Jamie K. could perform. Filing 9-2 at 29. Accordingly, the ALJ found Jamie K. "not disabled" as defined by 42 U.S.C. §§ 416(i) and 223(d) of the Social Security Act. *Id.*

## II.    DISCUSSION

### A.  Standard of Review

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). The Court must consider evidence that "both supports and detracts from the ALJ's decision" and will not reverse an administrative decision solely because "some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). "If, after reviewing the record, the court finds

it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)). The Court should not reverse merely because the Court would have decided differently. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). The Eighth Circuit Court of Appeals has held that a court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

Additionally, the Court must determine whether the Commissioner's decision is "based on legal error." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (quoting *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (internal citations omitted) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003) and *Nettles v. Schweiker*, 714 F.2d 833, 836 (8th Cir. 1983)). No deference is owed to the Commissioner's legal conclusions. *Brueggemann*, 348 F.3d at 692 (stating that allegations of legal error are reviewed de novo).

## B. Analysis

Jamie K. makes four arguments in support of reversing the ALJ's decision. First, Jamie K. contends that the ALJ erred in failing to explain why she did not expressly include in Jamie K.'s RFC that Jamie K. was limited in performing detailed instructions and tasks. Second, Jamie K. faults the ALJ for failing to fully and fairly develop the record in formulating her RFC. Third, Jamie K. argues that the ALJ did not provide good reasons for finding her subjective complaints not credible. Finally, Jamie K. asserts that the ALJ who adjudicated her case was without power

18

to do so because she was unlawfully appointed. The Court rejects these arguments and affirms the Commissioner's decision.

### 1. *Detailed Instructions Limitation*

Jamie K. first argues that the ALJ erred "under *Gann v. Berryhill*" by failing to explain why she did not expressly include that Jamie K. was limited in performing detailed instructions and tasks in her RFC. Moreover, Jamie K. contends, if such a limitation is included in Jamie K.'s RFC, then two of the three jobs that the VE testified were available to her conflict with her RFC and cannot be used as evidence that she is not disabled.

The non-examining psychological consultants, Dr. Braymen and Dr. Newman, concluded that Jamie K would be "moderately limited" in her "ability to carry out detailed instructions." Filing 9-3 at 8, 29. Dr. Braymen explained that Jamie K. "should avoid work that requires more detailed instructions," Filing 9-3 at 8, while Dr. Newman elaborated that Jamie K. "may have moderate limitations with more detailed tasks. Filing 9-3 at 29. The ALJ found that these determinations were "generally persuasive because they are consistent with the evidence in the record." Filing 9-2 at 28. Another medical professional, Dr. Mathisen, performed a consultative examination on November 28, 2019, and concluded that Jamie K. is "capable of maintaining attention and concentration needed for task completion" and "understanding short and simple instructions" but might require "a specialized supervisor to carry out such instructions. Filing 9-2 at 28; Filing 10-1 at 199. The ALJ also found this determination "generally persuasive because Dr. Mathisen supported his opinion with his examination results, observations of [Jamie K.'s] functioning, and a review of her medical records" and because it was "consistent with the evidence in the record. Filing 9-2 at 28. In her RFC assessment—which mirrored the hypothetical the ALJ posed to the VE—the ALJ limited Jamie K. "to performing entry-level simple routine tasks."

Filing 9-2 at 23. After thoroughly reviewing Jamie K.'s issues with anxiety and depression, the ALJ explained that this limitation would "avoid exacerbating [Jamie K.'s] mood changes, stress levels, or anxiety, as well as her fatigue," but noted that Jamie K.'s "intact memory, moods, and judgment are consistent with this residual functional capacity." Filing 9-2 at 26.

Jamie K. faults the ALJ for not expressly including a "detailed instructions" limitation in her RFC. In support, Jamie K. refers this Court to the Eighth Circuit Court of Appeals case *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017), in which the court held that an ALJ erred by not including adaptive limitations in the claimant's RFC. In *Gann*, the ALJ expressly gave "significant weight" to the opinions of two medical professional that found that the claimant's ability to adapt to a work environment was compromised because of her mental and physical impairments. *See Gann*, 864 F.3d at 952. However, the ALJ "failed to include anything about adaptation restrictions in the RFC assessment in the hypothetical posed to the VE . . . ." *Id.* The court explained that the VE's testimony was not capable of supporting the ALJ's finding because neither the hypothetical nor the RFC "comprehensively describe[d] the claimant's limitations." *Id.*

The Court finds *Gann* distinguishable from the facts of this case. Unlike in *Gann*, in which the ALJ completely omitted any adaption restrictions in the claimant's RFC, the ALJ in this case did include reasoning limitations in Jamie K.'s RFC. Moreover, the reasoning limitations in Jamie K.'s RFC appear substantially similar to the medical opinions that the ALJ found "generally persuasive." Both Dr. Braymen and Dr. Newman concluded that Jamie K. is "moderately limited" in her "ability to carry out detailed instructions," while Dr. Mathisen opined that Jamie K. could understand "short and simple instructions." Filing 9-3 at 8, 29; Filing 10-1 at 199. The RFC and the ALJ's hypothetical to the VE limited Jamie K. to carrying out "entry-level simple routine

tasks." Filing 9-2 at 23. Unlike *Gann*, the Court perceives no inconsistency between these medical opinions and Jamie K.'s RFC.

Jamie K. makes much out of the fact that Dr. Braymen and Dr. Newman stated that Jamie K. was "moderately limited" in carrying out detailed instructions to support her argument that the RFC should have expressly stated that she could not perform "detailed instructions." To the contrary, the Court finds that the ALJ appropriately accounted for Jamie K.'s moderate limitation in carrying out detailed instructions by including a limitation to "entry-level simple routine tasks." A moderate limitation is not equivalent to a significant or total limitation. *See Moderate*, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/moderate (accessed August 15, 2022) (defining "moderate" as "not severe in effect; not seriously or permanently disabling or incapacitating").[2] Thus, the medical testimony concerning Jamie K.'s reasoning abilities that the ALJ found "generally persuasive" did not require an express limitation totally precluding Jamie K. from performing any detailed tasks, thereby limiting the jobs available to her. *Cf. Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (noting that the reasoning level requirements listed in the DOT are "an upper limit across all jobs in the occupational category, not a requirement of every job within a category"). The ALJ thoroughly reviewed Jamie K.'s issues with anxiety and depression and properly considered the medical evidence in formulating Jamie K.'s reasoning limitations in her RFC. *See Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016) ("The RFC must (1) give appropriate consideration to all of [the claimant's] impairments, and (2) be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting." (alteration in original) (quoting *Partee v. Astrue*, 638 F.3d

---

[2] Nothing in the record provides an alternative definition for "moderately limited."

860, 865 (8th Cir. 2011))). Accordingly, the ALJ did not err in not expressly including a "detailed instructions" limitation in Jamie K.'s RFC and the hypothetical posed to the VE.

Finally, to the extent that Jamie K. argues that the limitation to performing "entry-level simple routine tasks" in her RFC conflicts with two of the three jobs the VE testified were available to her, the Court is unpersuaded. Two of the three occupations proposed by the VE, "Routing Clerk" and "Router," require a Reasoning Level of 2, which is the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Dictionary of Occupational Titles, App. C, 1991 WL 688702. In *Moore v. Astrue*, the Eighth Circuit Court of Appeals held that there was no direct conflict between a limitation to "carrying out simple job instructions" for "simple, routine and repetitive work activity" and jobs requiring a Reasoning Level of 2. *See Moore*, 623 F.3d at 604. Likewise, in this case, there is no conflict between a Reasoning Level of 2 and Jamie K.'s limitation to performing "entry-level simple routine tasks." The limitations in this case and the limitations in *Moore* are virtually identical. Accordingly, there is no conflict between Jamie K.'s RFC and the job requirements of the "Routing Clerk" and "Router" jobs.

### 2. *Fully and Fairly Developing the Record*

Jamie K. next argues that the ALJ erred in not ordering a consultative examination for her physical limitations to help formulate her RFC. The Commissioner responds that the record before the ALJ—which included Jamie K.'s treatment record, State agency medical opinions, a consultative examination for Jamie K.'s psychological issues, a third-party function report from Jamie K.'s mother, and Jamie K.'s own testimony—was sufficient evidence for the ALJ to make

an informed decision about the limiting effects of Jamie K.'s impairments. The Court agrees with the Commissioner.

ALJs have a duty to fully and fairly develop the record. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). However, "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Id.* (citing *Stormo*, 377 F.3d at 806). If the evidence in the record is consistent and sufficient for the ALJ to determine whether a claimant is disabled, the ALJ will make a determination based on that evidence. *See* 20 C.F.R. § 404.1520b(a). "The ALJ does not 'have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" *Vossen*, 612 F.3d at 1016 (citing *Stormo*, 377 F.3d at 806). Moreover, "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (citing *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010)).

Jamie K. conclusively surmises that the ALJ needed to order a consultative examination to evaluate her physical limitations. But Jamie K. does not explain why the record before the ALJ was insufficient or what crucial issue was undeveloped that necessitated such an examination. *See* *Vossen*, 612 F.3d at 1016. As the Commissioner points out, the record contained Jamie K.'s treatment record, State agency medical opinions, a consultative examination for Jamie K.'s psychological issues, a third-party function report from Jamie K.'s mother, and Jamie K.'s own testimony. Jamie K. has not demonstrated that there are any gaps in these records or testimony rendering the evidence insufficient for the ALJ to determine whether Jamie K. was disabled.[3] *See*

---

[3] The Court further notes that Jamie K. did not submit additional records despite the ALJ waiting six weeks for her to do so. Filing 9-2 at 14; *cf. Knox v. Colvin*, 637 F. App'x 956, 960 (8th Cir. 2016) (rejecting argument that the ALJ failed to develop the record because, inter alia, the claimant never sought a consultative examination).

*Martise*, 641 F.3d at 927 ("[T]here is no indication that the ALJ felt unable to make the assessment he did . . . ." (alteration in original) (quoting *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005))). Accordingly, the ALJ did not err by declining to order a consultative examination.

3. *Jamie K.'s Subjective Complaints*

Jamie K. contends that the ALJ erred in discounting her subjective complaints about her gastrointestinal issues and hearing limitations. Jamie K. further argues that the ALJ erred in failing to address her mother's testimony about Jamie K.'s symptoms in the ALJ's written findings and conclusions. The Court concludes that the ALJ properly discounted Jamie K.'s complaints and, although it would have been better for the ALJ to address Jamie K.'s mother's testimony, failing to do so does not constitute reversible error.

A court must afford deference to an ALJ's credibility determination. *See Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). When considering subjective complaints, an ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)); *see also* 20 C.F.R. § 404.1529(c). These factors are commonly referred to as the *Polaski* factors. Importantly, "an ALJ need not explicitly discuss each [*Polaski*] factor." *Schwandt*, 926 F.3d at 1012 (citing *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011)). The ALJ may also consider "the absence of objective medical evidence to support the complaints," although it cannot be the sole basis for discounting a claimant's subjective complaints. *See Grindley*, 9 F.4th at 630; *see also Schwandt*, 926 F.3d at 1012 (noting that an ALJ ""may decline to credit a claimant's subjective complaints 'if the

24

evidence as a whole is inconsistent with the claimant's testimony.'" (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016))). Upon review, courts will defer to the ALJ's evaluations of a claimant's credibility provided that the determination is "supported by good reasons and substantial evidence," *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)), and "even if every [*Polaski*] factor is not discussed in depth." *Id.* (quoting *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001)).

Jamie K. first asserts that the ALJ erred in discounting Jamie K.'s subjective complaints about the severity of her gastrointestinal issues. The Court disagrees. In her written findings and conclusions, the ALJ concluded that Jamie K.'s gastrointestinal issues were not severe impairments. Filing 9-2 at 17–18. The ALJ noted that Jamie K. reported "a history of intermittent abdominal pain, chronic gastritis, irritable bowel syndrome (IBS) with constipation, and gastroesophageal reflux disease." Filing 9-2 at 17. As explained in the ALJ's written findings and conclusions, Jamie K. was initially diagnosed with C. diff during April of 2019, but after treatment she tested negative and testified at the hearing that her C. diff had resolved. Filing 9-2 at 17.

Moreover, despite Jamie K. continuing to report symptoms of acute diarrhea with intermittent constipation along with bile vomiting, the ALJ observed that her October 2019 upper gastrointestinal endoscopy showed that her upper and middle esophagus was normal. Filing 9-2 at 17. Furthermore, the ALJ observed that while there was "LA Grade A reflux esophagitis," there was no bleeding in the lower third of her esophagus, gastritis, and normal duodenum. Filing 9-2 at 17. The ALJ also surveyed the numerous tests performed on Jamie K. for her gastrointestinal issues, which came back normal. Filing 9-2 at 18. Beyond the inconsistency between Jamie K.'s tests and her subjective complaints, the ALJ commented that, despite the reported gastrointestinal issues, Jamie K. did not experience any weight loss, maintained normal muscle tone and strength,

and was often in no acute distress. Filing 9-2 at 18. The Court finds that the ALJ properly evaluated and discounted Jamie K.'s subjective complaints about her gastrointestinal issues.

Jamie K. also accuses the ALJ of failing to properly consider Jamie K.'s reported hearing limitations by including in Jamie K.'s RFC that she "should avoid concentrated exposure to noise, meaning she could perform work at the moderate to quiet work environments, but not noisy or very noisy. Filing 9-2 at 23. According to Jamie K., the ALJ should not have stated that Jamie K. could work in moderately loud work environments. The ALJ's written findings and conclusions, however, demonstrate that the ALJ properly considered Jamie K.'s hearing limitations. The ALJ thoroughly outlined the testing, diagnoses, and treatment for Jamie K.'s hearing issues. Filing 9-2 at 24–25. The ALJ noted that Jamie K.'s September 2018 audiogram post-surgery showed normal hearing in her right ear and improved hearing in her left ear. Filing 9-2 at 24. Her word discrimination was 100% for her right ear and 92% for her left ear. Filing 9-2 at 24. After additional operations, Jamie K. underwent another audiogram in September of 2020 that showed 100% word recognition score at 70 decibels with 55 decibels masking bilaterally. Filing 9-2 at 25. The ALJ also found it significant that Jamie K. testified that she was able to hear without hearing aids, so long as she was in a quiet environment, although she had difficulty if there was background noise or multiple people speaking. Filing 9-2 at 35. The Court concludes that the ALJ appropriately formulated Jamie K.'s hearing limitations in her RFC.[4]

Finally, the Court finds no error simply because the ALJ did not discuss Jamie K.'s mother's statements in a third-party function report in the ALJ's written findings and conclusions.

---

[4] Even if Jamie K. was limited to quiet environments, the identified jobs of Routing Clerk, Router, and Produce Weigher would remain, because all of them have a Nosie Level of 2, Quiet. *See 222.587-038 Router*, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 672123; *222.687-022 Routing Clerk*, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 672133; *299.587-010 Produce Weigher*, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 672639. Thus, any error in not including a limitation to quiet environments would be harmless. *Grindley*, 9 F.4th at 629 (no reversal necessary if error was harmless).

The Eighth Circuit Court of Appeals cautions that "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Grindley*, 9 F.4th at 629 (quoting *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019)). When "it is evident that most of [the third party's] testimony concerning [the claimant's] capabilities was discredited by the same evidence that discredits [the claimant's] own testimony concerning his limitations" reversal is not required. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) (alterations in original) (quoting *Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995)). In this case, Jamie K. does not explain what her mother reported that was not already considered by the ALJ when evaluating Jamie K.'s subjective complaints. Like Jamie K.'s subjective complaints, her mother stated that Jamie K. had several ear surgeries, vomited and went to the bathroom often, and was experiencing pain. Filing 9-6 at 26–33. Therefore, the reasons for the ALJ's discounting of Jamie K.'s subjective complaints equally rebuts the report from Jamie K.'s mother. *See id.* (holding that the ALJ's failure to explicitly address the claimant's girlfriend's statement did not require remand when the ALJ sufficiently assessed the claimant's credibility). Accordingly, the Court finds that the ALJ did not err by discounting Jamie K.'s subjective complaints and not explicitly addressing Jamie K.'s mother's report.

      1.     *The ALJ was Properly Appointed*

Finally, Jamie K. argues that former Acting Commissioner Berryhill was without power to appoint the ALJ who adjudicated her case. According to Jamie K., under the Federal Vacancies Reform Act (FVRA), Berryhill's authority as Acting Commissioner ended before she appointed the ALJ in Jamie K.'s case.

There is no dispute in this case that the Commissioner of the SSA is a "Head[] of [a] Department[]" and principal officer who must be appointed by the President and confirmed by the

Senate under the Appointments Clause of the United States Constitution. *See* U.S. Const. art. II, § 2, cl.2; 42 U.S.C. §902(a). When a principal officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," the FVRA governs who may serve as an acting head of a department subject to certain time limits. *See* 5 U.S.C. § 3345(a).

Jamie K. argues that Berryhill's authority as Acting Commissioner ended under the FVRA before she appointed the ALJ in Jamie K.'s case. When former Acting Commissioner Carolyn Colvin resigned upon the inauguration of President Trump, Berryhill, the Deputy Commissioner for Operations, became the next Acting Commissioner of the FVRA by virtue of President Obama's December 2016 memorandum establishing an order of succession for Social Security officials to become Acting Commissioners under the FVRA. *See Bauer v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 2918917, at *2 (N.D. Iowa July 25, 2022); Presidential Memorandum Providing an Order of Succession Within the Social Security Administration, 81 Fed. Reg. 96337 (Dec. 23, 2016). On March 6, 2018, Berryhill temporarily stepped down as Acting Commissioner. *See* Letter from Thomas H. Armstrong, U.S. Gov't Accountability Off. Gen. Couns., to Donald Trump, U.S. President (March 6, 2018), https://www.gao.gov/assets/b-329853.pdf (reporting that Berryhill's initial service as Acting Commissioner extended beyond the time allowed under the FVRA). Once President Trump nominated Andrew Saul as the Commissioner of Social Security on April 17, 2018, Berryhill resumed her role as Acting Commissioner while Saul's nomination was pending. *See Brian T. D. v. Kijakazi*, No. 19-CV-2542 (DTS), 2022 WL 179540, at *4 (D. Minn. Jan. 20, 2022). During this second term as Acting Commissioner, Berryhill appointed the ALJ who adjudicated Jamie K.'s case. *See* Filing 13 at 30; Filing 20 at 25. According to Jamie K., the FVRA did not allow Berryhill to resume her role as Acting Commissioner during the pendency of Saul's nomination.

5 U.S.C. § 3346 imposes time limits on those "serving as an acting officer." *See* 5 U.S.C. § 3346(a). The statute provides:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office--
>> (1) for no longer than 210 days beginning on the date the vacancy occurs; or
>> (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

*Id.* Jamie K. argues that, under (a)(1), Berryhill could not serve any longer than 210 days as Acting Commissioner. Because Berryhill initially served as Acting Commissioner for 210 days after former Acting Commissioner Colvin resigned, Berryhill could not resume the role of Acting Commissioner when President Trump nominated Saul as SSA Commissioner. The Commissioner disagrees, contending that (a)(1) does not proscribe the total amount of time a person may serve as Acting Commissioner. Instead, the Commissioner argues, (a)(2) is a "spring-back" provision that allowed Berryhill to resume her role as Acting Commissioner during the pendency of Saul's nomination and confirmation.

Jamie K. points to a recent case in the District of Minnesota, *Brian T.D. v. Kijakazi*, No. 19-cv-2542 (DTS), 2022 WL 179540 (D. Minn. Jan. 20, 2022), in support of the proposition that (a)(2) is not a "spring back" provision. *See* 2022 WL 179540 at *11–14 (concluding that, under § 3346(a), Berryhill was without authority to nominate ALJs during her second term as Acting Commissioner). In contrast to *Brian T.D.*, however, courts have overwhelmingly concluded that § 3346(a)(2) allows an individual to serve as an Acting Commissioner beyond the 210 days proscribed by subsection (a)(1) when the President nominates a new Commissioner. *See e.g., Reuter v. Saul*, No. 19-CV-2053-LLR, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020), *report and recommendation adopted sub nom. Reuter v. Comm'r of Soc. Sec.*, No. 19-CV-2053-

LRR, 2020 WL 6161405 (N.D. Iowa Oct. 21, 2020); *Thomas S. v. Comm'r of Soc. Sec.*, No. C21-05213-MAT, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022). In particular, this Court finds persuasive the analysis of a judge in the Northern District of Iowa in the case *Bauer v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 2918917 (N.D. Iowa July 25, 2022). In *Bauer*, the court interpreted the text of § 3346(a)(2) and concluded "that the plain language of the statute authorizes acting service in two instances: during the initial 210 days after a vacancy is created, and while a nomination is pending." *Id.* at *8. The court found that the use of "or" between subsections (a)(1) and (a)(2) did not render them mutually exclusive because typically the word "either," rather than "or," denotes exclusivity between statutory provisions. *Id.* at *7 (citing *Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 788 (N.D. Tex. 2014)). Instead, the court reasoned, the disjunctive "or" in the statute allows one individual to serve during either or both of the periods set out in § 3346(a). *Id.* at *7–8. This Court finds the Northern District of Iowa's interpretation persuasive and adopts it. Accordingly, the Court concludes that Berryhill had the authority under the FVRA to nominate the ALJ that oversaw Jamie K.'s case.

## III.   CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision in Jamie K.'s case. Accordingly,

IT IS ORDERED:

1. Jamie K.'s Motion for an Order Reversing the Commissioner's Decision, Filing 12, is denied;

2. Kijakazi's Motion for an Order Affirming the Commissioner's Decision, Filing 19, is granted;

3. The Commissioner's decision is affirmed;

4.   Jamie K.'s case is dismissed with prejudice; and

5.   The Court will enter a separate judgment.

Dated this 19th day of August, 2022.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge